UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE YURK,

    Plaintiff,

v.

APPLICATION SOFTWARE
TECHNOLOGY CORP.,

    Defendant.

Case No. 2:15-cv-13962
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING IN PART DEFENDANT'S MOTION TO DISMISS COUNT II [5]**

    Plaintiff Dale Yurk was formerly employed by Defendant Application Software Technology. While working for AST, Yurk learned that AST was engaged in or planning conduct that he thought might be illegal. Yurk raised the conduct with his superiors. According to Yurk, his superiors did not quell his concerns and, worse, AST retaliated against him by first removing him from a project and then offering him a separation agreement. Yurk maintains that AST's retaliation violates Michigan's Whistleblower Protection Act and Michigan public policy and thus filed a two-count complaint against AST.

    AST has moved to dismiss Yurk's public policy claim. (R. 5.) As will be explained, the Court agrees with AST that Yurk has not adequately pled a public policy claim and so the Court will grant AST's motion on that basis.

## I.

The Court recites as fact the non-conclusory allegations of Yurk's Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

In 2014, Yurk, an experienced computer programmer, started working for Applications Software Technology. (R. 1–2 at PID 12, ¶¶ 5, 7.) Yurk was part of a team tasked with "develop[ing] a software solution to unify the City of Detroit's computer systems." (*Id.* ¶ 9.) Yurk "developed coding specific for the City of Detroit's solution." (*Id.* ¶ 10.)

At some point, "Yurk discovered that AST was planning on using the coding structures specifically for the City of Detroit as a product to be resold/remarketed to future customers." (R. 1–2 at PID 12, ¶ 12.) Yurk thought that this plan could be illegal as the City owned the software solution that he had helped develop. (*Id.* ¶ 13.) In addition, Yurk was concerned that AST "was overcharging" the City of Detroit for the project. (*Id.* ¶ 14.)

So on July 7, 2015, Yurk emailed two of his superiors. (R. 1-2 at PID 3, ¶¶ 16–17.) One responded that his concerns were not "relevant to the project." (*Id.* ¶ 19.) And the manager of the City of Detroit project (who had also been included in the email chain) told Yurk that challenging AST's decisions was "not conducive or productive." (*Id.* ¶¶ 19, 20.)

On July 9, Yurk contacted another person in AST's management, Tim Broker. (*See* R. 1-2 at PID 14, ¶ 23.) Yurk's email "advis[ed] AST that [Yurk] would report these issues to the City if he did not receive appropriate assurances that AST's conduct was legal." (*Id.*) The next day, AST removed Yurk from the City project. (*Id.* ¶ 24.)

A few days later, and with no response from Broker, Yurk forwarded the same email to AST's CEO. (R. 1-2 at PID 14, ¶ 25.) (Broker would respond that night stating that Yurk had

2

"gone way too far here." (*Id.* ¶ 26.)) On July 16, AST's CEO "set up a time to talk to Yurk about his concerns." (*Id.* ¶ 27.)

The next day, "Broker told Yurk that his employment was no longer required, and [Yurk] was presented with [a] separation agreement." (*Id.* ¶ 28.)

A few months later, Yurk filed this lawsuit. (*See* R. 1.) Count I of his Amended Complaint asserts that AST's retaliatory conduct violated Michigan's Whistleblower Protection Act. Count II claims that AST's retaliation was contrary to Michigan public policy. (*See generally* R. 1-2.)

AST has moved to dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 5.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Aschcroft Corp. v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663. Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

## III.

AST argues that Count II of the Amended Complaint must be dismissed for two reasons. AST's primary argument is that the Whistleblower Protection Act is Yurk's exclusive means of

recovery so his public-policy claim is "preempted." (R. 5 at PID 38–41.) Alternatively, AST argues that the facts alleged do not amount to a violation of public policy. (R. 5 at PID 41–42.) Because AST's alternative argument carries the day, the Court starts there.

### A.

AST asserts that Michigan law has not recognized that it is contrary to public policy for an employer to retaliate against an employee because the employee reported unlawful conduct to his superiors. (R. 5 at PID 41–42.) Building on this legal premise, AST asserts that Yurk's public policy claim must be dismissed because all Yurk has pled is that he reported unlawful conduct to his superiors. (R. 5 at PID 42.) The Court agrees.

Although employment in Michigan is presumed to be at will, Michigan has recognized that "some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). The Michigan Supreme Court has identified three such grounds: "(1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." *McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009) (citing *Suchodolski*, 316 N.W.2d at 711–12). But, and most important for present purposes, "no law or policy tells Michigan employers that they must not retaliate against employees who report legal violations to their supervisors." *Scott v. Total Renal Care, Inc.*, 194 F. App'x 292, 298 (6th Cir. 2006).

Yurk asserts that AST has wrongly "pigeon hol[ed]" his claim by asserting that he has pled nothing more than reporting illegal activity to superiors. (R. 7 at PID 54.) Properly

4

understood, says Yurk, his claim "is based on his active opposition to and refusal to participate in defendant's unlawful plan to sell intellectual property that belonged to the City of Detroit." (*Id.*) In other words, Yurk says his claim falls within the second public-policy exception to the employment-at-will doctrine.

But Yurk's Amended Complaint does not plead that he refused to participate in AST's plan to resell the software. As far as the Court can tell, AST—independent of Yurk—planned to resell the software developed for the City. The Court infers this from Yurk's allegations that he "*discovered* that *AST* was planning" on reselling the code (R. 1–2 at PID 12, ¶ 12 (emphasis added)), that he thought "*AST's* activity" could be illegal (*id.* at PID 13, ¶ 13 (emphasis added)), and that, when Yurk contacted his superiors about the issue, they essentially told him to mind his own business (*see id.* PID 13–14, ¶¶ 19, 20, 26, 27). As such, Yurk has not pled that he refused to participate in his employer's unlawful conduct—AST had apparently planned to resell without involving Yurk.

Yurk also asserts that his claim falls within the second public policy exception to the at-will doctrine because he has pled that "he refused to permit defendant from violating intellectual property laws[.]" (R. 7 at PID 55.) It is perhaps fair to say, based on the allegations, that Yurk "refused" to allow AST to resell the software. But, again, he did so by raising his concerns about AST's decision with his superiors. And, as noted, the Sixth Circuit has drawn a distinction between refusing to participate in unlawful activity, which is a recognized public policy exception, and reporting unlawful activity to superiors, which is not. *Scott*, 194 F. App'x at 298; *see also Weir v. Seabury & Smith, Inc.*, No. 13-CV-14329, 2015 WL 3755331, at *14 (E.D. Mich. June 16, 2015) (Michelson, J.) (applying *Scott* and finding that the plaintiff's public policy claim was based on the plaintiff's "internal complaints about the alleged illegal scheme, not on

5

[the plaintiff's] refusal to participate" in that scheme and that "a public policy claim cannot be based on internally reporting alleged unlawful conduct to a supervisor").

Finally, Yurk argues that his allegations are similar to the facts of *Robinson v. Radian, Inc.*, 624 F. Supp. 2d 617 (E.D. Mich. 2008), where the court found that the plaintiff's public policy claim was viable. The Court disagrees. In *Robinson*, there was evidence the employee refused to aid in the employer's wrongful conduct. In particular, the employee believed that his employer was not complying with federal regulations governing hiring and produced evidence that he thus refused to sign off on the hire of several candidates. *Id.* at 641. Yurk's allegations are not similar: as explained, AST's plan to resell software developed for the City was independent of Yurk's involvement.

Accordingly, the Court finds that Yurk has not adequately pled that AST retaliated against him "for the failure or refusal to violate the law in the course of employment," *McNeil*, 772 N.W.2d at 24, and that Count II of the Amended Complaint thus fails to state a claim for relief.

B.

The Court grants AST's motion solely on the foregoing reasoning. But, in the course of researching AST's primary argument, the Court uncovered two issues worth noting given that Yurk may seek to amend his complaint and that AST may file additional dispositive motions.

For one, AST has treated Yurk's claim under Michigan's Whistleblower Protection Act as resting on a single factual basis. This is not correct. Yurk asserts that AST retaliated against him (1) because he threatened to tell the City that "AST was planning" on reselling the software developed for the City project (R. 1-2 at PID 12, ¶ 12) *and* (2) because he threatened to report AST's overcharging to the City. The distinction matters because the WPA does not cover

6

"future, planned, or anticipated acts amounting to a violation or a suspected violation of a law," *Pace v. Edel-Harrelson*, — N.W.2d —, 499 Mich. 1, 8 (2016); *see also id.* at 9–10 ("[B]ecause plaintiff reported a suspected future violation of a law, not a suspected existing violation, plaintiff did not engage in 'protected activity' for purposes of the WPA[.]").

Second is the legal issue of the WPA preempting—if that is the correct term—a public policy claim where the public policy claim is based on conduct that violates the WPA. The issue can be stated this way: if a plaintiff adequately pleads all the elements of a WPA claim (or, at summary judgment, shows that a reasonable jury could find all the elements of a WPA claim), and the same allegations (or facts) are the basis for a public policy claim, must the Court dismiss the public policy claim? Or may the plaintiff maintain the public policy claim on the possibility that, ultimately, it may not be able to prove the WPA claim? AST answers yes to the first question, Yurk answers yes to the second. The Court believes the answer is less than clear and not adequately briefed by the parties.

A pair of Michigan Supreme Court cases lend support to AST's view of the law. In *Dudewicz v. Norris-Schmid, Inc.*, the plaintiff claimed that his employer violated both Michigan's WPA and Michigan public policy. 503 N.W.2d 645, 646 (Mich. 1993). The trial court found that "the public policy argument failed to state a claim upon which relief could be granted" and, on the WPA claim, it directed a verdict in favor of the employer. *Id.* at 646–47. On appeal, the Michigan Supreme Court held that the trial court erred in finding for the employer on the WPA claim. *Id.* at 649. But the Court found that dismissal of the public policy claim was warranted on the theory that the WPA provided the exclusive remedy for the employer's conduct. The Court explained that "[a]s a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative," that "[a]t

7

common law, there was no right to be free from being fired for reporting an employer's violation of the law," and so, the remedies provided by the WPA "are exclusive and not cumulative." *Id.* at 649–50. The Court summarized the exclusive-remedy rule this way: "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Id.* at 650. Because the WPA was an applicable statutory prohibition against discharge in retaliation for the conduct at issue (filing criminal charges for a co-worker's workplace assault), the Michigan Supreme Court affirmed the grant of summary disposition on the public policy claim—despite that, on remand, a jury might find the WPA claim not viable. *Id.*

*Dolan v. Cont'l Airlines/Cont'l Exp.*, 563 N.W.2d 23 (Mich. 1997), is procedurally similar to *Dudewicz*. The trial court in *Dolan* dismissed the plaintiff's WPA claim and public policy claim as inadequately pled. *See id.* at 26–27. On appeal, the Michigan Supreme Court ruled that the trial court erred in finding that the plaintiff had not stated a viable WPA claim. *Id.* at 27–28. Then, citing *Dudewicz*, the Court held, "Because the WPA is the exclusive remedy against discharge in retaliation for the conduct at issue, the grant of the motion for summary disposition on the public policy claim is affirmed." *Id.* at 28. This was so even though the Michigan Supreme Court remanded for further litigation on the WPA claim, and thus, the WPA claim might have ultimately been found not viable. *See also Scott v. Total Renal Care, Inc.*, No. 04-71700, 2005 WL 1680677, at *9 (E.D. Mich. July 19, 2005) ("When the plaintiff's claim falls within the protection of the WPA, she cannot sustain a public policy tort claim for the same alleged wrongful conduct. Contrary to Plaintiff's arguments here, the test is not whether the plaintiff can successfully prove the elements of her WPA claim. Rather, it is whether the alleged underlying conduct, if proven, falls within the protection of the WPA.").

But *Dudewicz* and *Dolan* are not the end of the story. Aside from the fact that those cases did not squarely present the question of whether a plaintiff can plead a WPA claim and—in the alternative—a public policy claim, a Michigan Court of Appeals case supports Yurk's view of the law.

In *Driver v. Hanley*, the plaintiff claimed that her employer violated the WPA, Michigan public policy, and breached their employment agreement. 575 N.W.2d 31, 33 (Mich. Ct. App. 1997). The case was appealed twice. On the first appeal, the Michigan Court of Appeals determined that the plaintiff's WPA claim should survive and then applied "the well established rule that the WPA provides the exclusive remedy for an employee who has been discharged wrongfully from employment for reporting an employer's violation of the law" to conclude that the plaintiff could not proceed with her breach of contract claim. *Id.* at 35. But, on remand, the trial court granted the employer summary disposition on the plaintiff's WPA claim. *Id.* at 34. The plaintiff appealed, arguing, in part, that because the trial court had dismissed her WPA claim, which the Michigan Court of Appeals previously found to have been her "exclusive remedy," the trial court should have reinstated her breach of contract claim. *Id.* at 35. The Michigan Court of Appeals agreed. It explained,

> The Michigan Supreme Court, in *Dudewicz*, held that because the WPA provided relief, the plaintiff's cumulative public policy claim was not sustainable. The Court explained that a public policy claim is sustainable 'only where there is not an *applicable* statutory prohibition against discharge in retaliation for the conduct at issue.' In this case, the circuit court determined that the WPA was not applicable to the facts regarding plaintiff's discharge. Because the WPA provided no remedy at all, it could not have provided plaintiff's exclusive remedy.

*Driver*, 575 N.W.2d at 36 (citations omitted). The Michigan Court of Appeals thus held that the trial court should have reinstated the plaintiff's breach of contract claim. *Driver*, 575 N.W.2d at 36; *cf. I.B. Mini-Mart II, Inc. v. JSC Corp.*, No. 296982, 2011 WL 1435978, at *3 (Mich. Ct.

App. Apr. 14, 2011) (explaining, where defendant moved to dismiss the plaintiff's complaint for failure to state a claim upon which relief may be granted, that "[plaintiff] is not required to elect to proceed under one theory or the other but can seek recovery on the basis of either an express contract or an implied contract until the fact finder determines that an express contract does not exist or is unenforceable").

*Driver* thus lends support to Yurk's argument that he should be able to plead a WPA claim and a public policy claim in the alternative: if this Court were to dismiss his public policy claim at the pleading stage under *Dudewicz*'s rule, *Driver* suggests that this Court would be required to reinstate that claim should the WPA claim falter later in litigation. (*Driver* also suggests that if the Court dismissed Yurk's public policy claim because the WPA provided his exclusive remedy, and a jury found that the WPA claim was not viable, the public policy claim would have to be reinstated *post-verdict*.)

Given that it is not apparent how to reconcile, on the one hand, the rule that inconsistent claims may be pled in the alternative and, on the other, *Dudewicz*'s rule that "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue," and because the Court has found that Yurk has not pled a public policy claim, the Court says no more. But should Yurk move to amend his complaint or should AST file another motion based on *Dudewicz*'s exclusive-remedy rule, the parties should thoroughly address this issue.

## IV.

For the reasons provided, Yurk has not stated a viable breach of public policy claim because he has merely pled that AST retaliated against him for bringing AST's suspected

unlawful conduct to the attention of his superiors. On that basis only does the Court GRANT AST's Rule 12(b)(6) Motion to Dismiss Count II of Plaintiff's First Amended Complaint (R. 5).

SO ORDERED.

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE

Dated:  June 24, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 24, 2016.

                                                s/Jane Johnson
                                                Case Manager to
                                                Honorable Laurie J. Michelson