UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE YURK,

    Plaintiff,

v.

APPLICATION SOFTWARE
TECHNOLOGY CORP.,

    Defendant.

Case No. 2:15-cv-13962
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S SECOND MOTION TO DISMISS COUNT II [23]**

Plaintiff Dale Yurk claims that while he was employed with Defendant Application Software Technology, he discovered that AST was reusing and reselling the software that he had developed for the City of Detroit. Yurk believed the resale infringed the City's intellectual property rights to the software. So Yurk contacted his superiors about the issue. Their answers did not quell his concerns, and they removed him from the City project. Yurk eventually contacted AST's CEO. Shortly thereafter, Yurk was terminated. Yurk says that his termination was unlawful retaliation for questioning AST's resale practice. As such, he filed a two-count complaint asserting that AST violated Michigan's Whistleblower Protection Act and Michigan public policy.

In a prior opinion and order, the Court dismissed the public-policy claim. *Yurk v. Application Software Tech. Corp.*, No. 2:15-CV-13962, 2016 WL 3457945 (E.D. Mich. June 24, 2016). The Court explained that while Michigan public policy prohibits terminating an employee "for [his] failure or refusal to violate the law in the course of employment," "'no law or policy tells Michigan employers that they must not retaliate against employees who report legal

violations to their supervisors.'" *Id.* at *2 (quoting *Scott v. Total Renal Care, Inc.*, 194 F. App'x 292, 298 (6th Cir. 2006)). The Court concluded that the conduct alleged in Yurk's (first amended) complaint was simply that AST had retaliated for Yurk's complaints to his superiors:

> As far as the Court can tell, AST—independent of Yurk—planned to resell the software developed for the City. The Court infers this from Yurk's allegations that he "*discovered* that AST was planning" on reselling the code, that he thought "*AST's* activity" could be illegal, and that, when Yurk contacted his superiors about the issue, they essentially told him to mind his own business. As such, Yurk has not pled that he refused to participate in his employer's unlawful conduct—AST had apparently planned to resell without involving Yurk.

*Id.* at *3 (emphasis in original, record citations omitted).

As the Court found that Yurk's complaint did not state a violation of Michigan public policy, it did not reach AST's other basis for dismissing that claim: that the claim was preempted by the Whistleblower Protection Act. *See Dudewicz v. Norris-Schmid*, Inc., 443 Mich. 68, 70, 503 N.W.2d 645, 646 (1993). But the Court did note that it was unclear how *Dudewicz*'s rule should be applied, remarking, "should Yurk move to amend his complaint or should AST file another motion based on *Dudewicz*'s exclusive-remedy rule, the parties should thoroughly address this issue." *Id.* at *5.

Yurk has filed a Second Amended Complaint (to which the Court will more simply refer to as the complaint). (R. 22.) And AST has filed another motion to dismiss it. (R. 23.) AST says that even with additional allegations, the complaint still does not state a public-policy claim, and, in any event, the claim is preempted by the WPA. The Court disagrees with AST's primary argument, but agrees that the WPA is Yurk's exclusive remedy. Accordingly, the Court will dismiss Yurk's public-policy claim on that basis.

**I.**

As compared to the prior complaint, the current complaint alleges Yurk's role in the allegedly unlawful scheme. In particular, the complaint asserts, "One of Yurk's projects with AST was developing a software solution to unify the City of Detroit's computer systems" (R. 22, ¶ 9); "Yurk believed that the manner in which AST was developing the project infringed on the City's intellectual property" (R. 22, ¶ 15); and "Yurk also learned that the reusable design of the City's new computer system was substantially more expensive than if the system were designed in a cheaper, yet non-reusable manner" (R. 22, ¶ 23). These allegations suggest that Yurk's coding was part of AST's resale plan. Notably, this is more than just alleging that Yurk wrote software for the City and, later, AST decided to resell that software. In that scenario (which is more what the prior complaint suggested), Yurk would still be a but-for cause of the resale (absent having written the software, there would be nothing to be resold), but he would not have been involved in the only part of the plan that was unlawful: reselling the software. The scenario suggested by the quoted allegations, however, indicates that the allegedly unlawful activity included the software's development: it was being written in a way that allowed for its reuse. And, as AST admits, Yurk "was employed as a software consultant to develop the software[.]" (R. 26, PID 311.) Thus, unlike the prior complaint, Yurk has alleged that the unlawful scheme included his participation.

The question thus becomes whether Yurk has adequately pled that he refused to continue to participate in the allegedly unlawful scheme, i.e., that he refused to violate the law. While close, the Court believes the answer is "yes." The complaint alleges that when Yurk contacted his superiors claiming that the reuse and resale practice was unlawful (R. 22, ¶¶ 13, 26–27, 29–30), they told him not to "engage in discussions which are not relevant to the project." (R. 22, ¶

3

32.) Implicit in AST's response was that Yurk should do his job without concerning himself with how the code would be used. *See Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 (6th Cir. 2011); *Giron v. Tyco Elecs. Corp.*, No. 2:16-CV-11803, 2016 WL 7405805, at *1 (E.D. Mich. Dec. 22, 2016) ("To state a plausible claim, a plaintiff need not show that the employer directed her to violate the law."). But Yurk refused to do this. He sent another email "explaining that he had personal experience with a similar situation with his former employer" and that he refused to "blindly follow orders." (R. 22, ¶ 38.) AST then removed him from the City project. (R. 22, ¶ 40.) Together, these allegations permit the reasonable inference that Yurk did not want to continue writing the software for the City in a reusable fashion and that when he made that known to AST, AST removed him from the project (and, ultimately, terminated his employment). The Court thus finds it plausible that Yurk "refus[ed] to violate the law in the course of [his] employment," *McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009).

The fact that the software was designed for resale, and that it was Yurk who was writing the software, also shows why the allegations of the complaint are now more analogous to the facts of *Robinson v. Radian, Inc.*, 624 F. Supp. 2d 617 (E.D. Mich. 2008), a case which the Court previously found inapposite. In its earlier opinion, the Court noted that unlike *Robinson*, where "the employee believed that his employer was not complying with federal regulations governing hiring and produced evidence that he thus refused to sign off on the hire of several candidates," "AST's plan to resell software developed for the City was independent of Yurk's involvement." *Yurk*, 2016 WL 3457945, at *3. But if, as the complaint now alleges, Yurk was writing software in a manner that allowed for its reuse, then AST's resale plan was not independent of Yurk's involvement.

4

In short, the Court can reasonably infer from the complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that AST retaliated against Yurk for his refusal to violate the law.

## II.

AST alternatively argues that the Court should dismiss Yurk's public-policy claim with prejudice because "the Whistleblower Act provides Plaintiff with his exclusive remedy in the event he could prevail at trial." (R. 23, PID 183.) The Court agrees that, based on the complaint, the WPA applies and precludes the maintenance of a public-policy claim.

In *Dudewicz*, the Michigan Supreme Court held that "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." 503 N.W.2d at 650. To state a claim under the WPA, Yurk must plead that he was about to report AST's suspected violation of a law to a public body and that AST discharged him (or took another adverse employment action) because of his threat to report. *See* Mich. Comp. Laws § 15.362; *Wurtz v. Beecher Metro Dist.*, 848 N.W.2d 121, 126 (Mich. 2014). In this case, Yurk has pled while he was in the process of raising his concerns about AST's resale practice to his superiors, including, apparently, informing them that he would report the practice to the City absent adequate assurances that the practice was lawful (*see* R. 22, ¶¶ 22, 29), AST removed him from the City project and terminated his employment (*see* R. 22, ¶¶ 29–43). It is thus plausible that AST violated the WPA. As such, the WPA is "an applicable statutory prohibition" against AST's retaliation and Yurk cannot also sustain a public-policy claim.

Yurk does not contest that if the WPA is applicable, he cannot sustain a public-policy claim. Instead, he argues that at the pleading stage, it is premature to conclude that the WPA applies. (*See* R. 25, PID 283.) Yurk suggests that he should be allowed to maintain a public-

5

policy claim until discovery reveals that the WPA is applicable: "Yes, a recovery under the WPA would preclude Yurk from recovering on a public policy claim (and vice versa). That is why discovery is needed to determine which claim more appropriately governs Yurk's allegations." (R. 25, PID 285.)

The Court believes that the Michigan Supreme Court's decision in *Dolan v. Cont'l Airlines/Cont'l Exp.*, 563 N.W.2d 23 (Mich. 1997), counsels toward a different approach. As discussed in the Court's prior opinion, in *Dolan*, the trial court had dismissed the plaintiff's WPA claim pursuant to "summary disposition under MCR 2.116(C)(8)," i.e., the court had "examined . . . the pleadings alone, absent consideration of supporting affidavits, depositions, admissions, or other documentary evidence." 563 N.W.2d at 27. On appeal, the Michigan Supreme Court found that the plaintiff had "stated a valid claim of wrongful discharge from employment under the WPA where she alleged that she reported or was perceived to report a violation or suspected violation of the law." *Id.* It thus remanded for further proceedings on the WPA claim. *Id.* at 28. But in doing so, the Michigan Supreme Court cited *Dudewicz*'s exclusive-remedy rule to hold, "Because the WPA is the exclusive remedy against discharge in retaliation for the conduct at issue, the grant of the motion for summary disposition on the public policy claim is affirmed." *Id.* Thus, *Dolan* strongly suggests that a public-policy claim is subject to dismissal on the pleadings in view of a well-pled WPA claim.

The Court acknowledges the Michigan Court of Appeals' decision in *Driver v. Hanley*, 575 N.W.2d 31 (Mich. 1997), which was also discussed at length in the Court's prior opinion. But that case is not inconsistent with dismissal at the pleading stage. Instead, *Driver* suggests that it might be inefficient to dismiss a public-policy claim at the pleading stage because, should the WPA prove inapplicable, the public-policy claim would have to be reinstated. *See id.* at 36

6

("In this case, the circuit court determined that the WPA was not applicable to the facts regarding plaintiff's discharge. Because the WPA provided no remedy at all, it could not have provided plaintiff's exclusive remedy."). But an inefficient dismissal is not the same as an improper dismissal.

The Michigan Supreme Court's decision in *Pace v. Edel-Harrelson*, 878 N.W.2d 784 (Mich. 2016), also does not preclude dismissal at the pleading stage. There, the Michigan Court of Appeals had concluded that the WPA covered the plaintiff's report of planned unlawful conduct, *id.* at 788, and thus declined to reach the merits of the plaintiff's public-policy claim under *Dudewicz*'s exclusive-remedy rule, *id.* at 786 n.4. The Michigan Supreme Court reversed, finding that the WPA only covered the report of "ongoing" unlawful conduct. *Id.* at 788. It thus remanded for the Michigan Court of Appeals to consider the public-policy claim on the merits. *Id.* at 789 & n.19. Thus, *Pace* indicates that should the WPA prove inapplicable, the public-policy claim must be considered on the merits. But it still permits dismissal of a public-policy claim in view of adequately-pled WPA claim—so long as the door remains open for reinstatement.

\* \* \*

For the foregoing reasons, the Court GRANTS IN PART AST's second motion to dismiss. Although the Court agrees with AST that, based on the complaint, the WPA provides Yurk with his exclusive means of recovery, the Court will not now dismiss Count II with prejudice. Consistent with *Driver* and *Pace*, should the WPA prove not "applicable," the Court

7

will entertain a motion to amend to reinstate the public-policy claim.

SO ORDERED.

Dated: February 17, 2017

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 17, 2017.

s/Keisha Jackson
Case Manager